# EXHIBIT 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br><br>10/18/2024 4:01:08 PM<br><br>Clerk of the Superior Court<br>By N. Argamosa     ,Deputy Clerk |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ASHLYNN MARKETING GROUP, INC., doing business as KRAVE KRATOM, and DOES 1-50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

C.B., individually on behalf of herself and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior Court<br><br>North County 325 South Melrose Drive, Vista, CA 92081 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>24CU019004N |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

LYNCH CARPENTER, LLP, Todd D. Carpenter, 1234 Camino Del Mar, Del Mar, CA 92014 Tel: 619.762.1910

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* October 24, 2024 | Clerk, by<br>*(Secretario)* | *N. Argamosa* | , Deputy<br>*(Adjunto)* |
| | | **N. Argamosa** | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Ashlynn Marketing Group, Inc.doing business as KRAVE KRATOM

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| LYNCH CARPENTER, LLP, Todd D. Carpenter (SBN 234464)<br>1234 Camino Del Mar, Del Mar, CA 92014<br><br>TELEPHONE NO.: 619.762.1910    FAX NO.: 858.313.1850<br>EMAIL ADDRESS: todd@lclllp.com<br>ATTORNEY FOR *(Name)*: Plaintiff C.B. | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>10/18/2024 4:01:08 PM<br><br>Clerk of the Superior Court<br>By N. Argamosa    , Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 325 South Melrose Drive
MAILING ADDRESS: 325 South Melrose Drive
CITY AND ZIP CODE: Vista, 92081
BRANCH NAME: North County

CASE NAME:
C.B. v. Ashlynn Marketing Group, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 24CU019004N |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: Judge Michael Washington<br>DEPT.: N31 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] Other complaint *(not specified above)* (42) |
| [x] Fraud (16) | [ ] Residential (32) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Other petition *(not specified above)* (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify)*: 6
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 18, 2024

Todd D. Carpenter                                    ▶ /s/ Todd D. Carpenter
_____                     _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**LYNCH CARPENTER, LLP**
Todd D. Carpenter (State Bar No. 234464)
todd@lcllp.com
Scott G. Braden (State Bar No. 305051)
scott@lcllp.com
James B. Drimmer (State Bar No. 196890)
jim@lcllp.com
1234 Camino Del Mar
Del Mar, CA 92014
Telephone:    (619) 762-1910
Facsimile:    (858) 313-1850

*Attorneys for Plaintiff and Proposed Class Counsel*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

10/18/2024 4:01:08 PM

Clerk of the Superior Court
By N. Argamosa        ,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., individually on behalf of herself and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ASHLYNN MARKETING GROUP, INC., doing business as KRAVE KRATOM, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.    24CU019004N<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff C.B. ("Plaintiff")[1] brings this action on behalf of herself and all others similarly situated against Defendant Ashlynn Marketing Group, Inc., d/b/a Krave, Krave Kratom, and/or Krave Botanicals ("Defendant" or "Krave") and Does 1 through 50, inclusive.

## NATURE OF THE ACTION

1.    This is a civil class action against Defendant for its false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, and liquid extract products (collectively, the "Products"). Kratom is both a plant and a drug. The kratom plaint (*mitragyna* speciosa) originates from Southeast Asia where its leaves have long been ingested to produce stimulant and opiate-like effects. Use of

---

[1] Because this action concerns issues of addiction and medical status, Plaintiff is filing under her initials for the sake of her personal privacy. Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result. Since addiction issues are still wrongly stigmatized, Plaintiff is filing this matter anonymously but will reveal her name as necessary to the Court under seal.

kratom in the United States was practically non-existent until the last decade. Since then, kratom has become a massively popular substance in the United States. This is because it is currently legal to consume, and because of the stimulant and opiate-like effects produced by its major alkaloid: Mitragynine ("MG").

2.      However, what reasonable consumers do not know is that the opiate-like effects produced by MG are not the result of novel chemical interactions in the brain. Rather, these alkaloids are behaving, in part, exactly like opioids. That is, the MG found in the kratom plant activate the same opioid receptors in the human brain as morphine, heroin, and other opiates. Consequently, kratom consumption has the same risks of addiction, dependency, and painful withdrawal symptoms, among various other negative side effects.

3.      Almost as soon as Defendant's Products hit the market the horror stories began to surface. Consumers stating that they were blindsided by these Products and suffering through the worst withdrawal symptoms they had ever experienced—worse than heroin by some accounts.

4.      The general public is largely unaware of kratom and its addictive potential. When reasonable consumers think of opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, or morphine; they do not think of kratom or expect the "all natural" "kratom alkaloid" Product sold at their local gas stations or corner stores to act like an opioid or have the same addiction and dependency risks as opioids. Kratom is extremely addictive, and as a result, tens of thousands of unsuspecting consumers have developed kratom dependencies that cause them serious physical, psychological, and financial harm.

5.      Defendant has intentionally failed to disclose these material facts regarding the dangers of kratom consumption anywhere on its Products' labeling, packaging, or marketing material. As a result, Defendant has violated warranty law and state consumer protection laws.

6.      Defendant relies on its Products' vague packaging and consumers' limited knowledge of kratom to get unsuspecting people addicted to its Products and reaps substantial profits from these addictions. Defendant relies on this ignorance and does nothing to correct it. Such activity is outrageous and is contrary to California law and public policy.

7.      Plaintiff seeks relief in her action individually, and as a class action, on behalf of similarly situated purchasers of Defendant's Products, for the following violations of: (i) California's Unfair Competition Law, Business and Professions Code § 17200, *et seq.* (the "UCL"); (ii) California's

Consumer Legal Remedies Act, Civil Code § 1750, *et seq.* (the "CLRA"); (iii) California's False Advertising Law, Business and Professions Code § 17500, *et seq.* (the "FAL"); (iv) breach of implied warranty; (v) unjust enrichment; and (vi) fraud by omission.

<u>**JURISDICTION AND VENUE**</u>

8.    This Court has general jurisdiction over Defendant and the claims set forth below pursuant to Civil Procedure Code, Section 410.10, and the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

9.    This Court has personal jurisdiction over Defendant because Defendant is an entity with constitutionally sufficient contacts with this County to make personal jurisdiction in this Court proper. Moreover, Defendant Krave is domiciled in California and its principal place of business is in this County. Defendant has additionally purposefully availed itself of the benefits of this forum and purposefully directed its activities to California.

10.    Pursuant to California Civil Code Section 395, venue is proper in this county as Defendant principal place of business is in this County, Defendant Krave resides in this County, and Plaintiff was harmed by Defendant's actions in this County.

<u>**GENERAL ALLEGATIONS**</u>

**A.    Background and Pharmacology of Kratom**

11.    "Kratom" refers to the substance derived from the leaves of a tropical plant, *mitragyna speciosa* (the "kratom plant"), indigenous to Southeast Asia, where it has been used in herbal medicine since the 19th Century. Kratom's first reported use in scientific literature was in 1836, when it was noted that Malays used kratom tree leaves as a substitute for opium. Historic use of the kratom plant was particularly well-documented in Thailand, Indonesia, and Malaysia, where kratom remains popular to this day.

12.    Kratom is the most widely used drug in Thailand. This popularity in Thailand does not mean Thailand believes kratom is harmless. To the contrary, Thailand understands that kratom is dangerous, as demonstrated by its ban of the substance in 1943.[2] Kratom was also historically popular in Malaysia until it was banned in 1952 under the Poisons Act.

---

[2] In 1943, Thailand banned the possession, use, and propagation of kratom, and later banned all kratom sales, imports, exports, and consumption all together. However, in 2021, Thailand decriminalized possession of kratom in response to a growing pressure on its justice system to fix the country's overcrowded prisons through liberalization of its drug laws.

CLASS ACTION COMPLAINT

13.     Kratom's unknown and inconsistent effects have historically been part of its appeal. For instance, the earliest accounts of kratom characterize kratom use for both a stimulant effect during hard day-labor by chewing fresh kratom leaves, and also for an analgesic or relaxing effect by brewing kratom into a tea.

14.     In the Western world, kratom is sold online and at herbal stores, gas stations, corner stores, smoke shops, and "head" shops where it is primarily marketed as an herbal medicine or natural supplement to use to "treat" a variety of ailments (e.g., pain, mental health, opioid withdrawal symptoms), and/or to obtain a "legal" or "natural" high.

15.     To create consumable kratom products, kratom plant leaves are harvested, dried, and crushed into a fine powder that is then packaged and sold in pouches, capsules, or liquid formulations.[3]

16.     The chemicals in the kratom plant which produce a psychoactive effect when ingested are called "alkaloids." "Alkaloids" are a class of various naturally occurring organic chemical compounds. The primary alkaloid in kratom leaves responsible for the kratom's effects is MG.

17.     MG produces a wide spectrum of effects because it interacts with many different receptors in the brain. Studies show that MG interacts with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the serotonin receptors (5-HT2A and 5-HT2C), all of which contribute to kratom's mood-lifting and stimulant-like effects.

18.     Most crucially, MG also interact with the mu-opioid receptor.[4] Yet consumers are largely ignorant of this fact. For instance, MG and was found to be more potent to the mu-opioid receptor than morphine when taken via oral administration.

19.     Accordingly, kratom products are referred to as a "quasi-opiate" by health professionals because of its opioid-like characteristics.

20.     Opioids are addictive not only because of the pleasurable effects that they produce, but also because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug. The tragedy of addiction is that users want to stop but cannot.

---

[3] When kratom leaves are extracted into a liquid formulation, this is colloquially called a "kratom shot."

[4] The mu-opioid receptor produces the most addictive or habit-forming effects, such as euphoria and analgesia. For this reason, the mu-opioid receptor is known as "the gateway to addiction" because it is the receptor which all opioids interact with to produce the classic opioid high feelings of euphoria, sedation, and pain relief.

21.　　All substances that act on the opioid receptors have a high risk of addiction, and kratom is no exception. Addiction occurs when an opioid is ingested on a regular basis and, over time, the user develops a tolerance to the drug that requires the user to consume an increased dose of the drug to achieve the same effects a lower dose previously had. As these doses increase, the body becomes dependent on the drug to feel normal and function properly. When the drug is suddenly taken away or the user tries to stop taking the drug, withdrawal occurs. Withdrawal symptoms cause the user to feel much worse than they did before they started taking the drug, and can be extremely painful and intolerable to the user.

22.　　Indeed, kratom withdrawal symptoms are very similar to those of traditional opioid withdrawal. These symptoms include irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, extreme dysphoria, and malaise.

23.　　Users typically start substances like kratom because of how good it makes them feel, but once addicted, they use kratom to avoid the pain and sickness of withdrawal. Use is no longer is about getting high, but about not feeling "sick."

**B.　Kratom Use and Addiction in the United States**

24.　　Over the past decade, kratom has exploded in popularity within the United States. As of 2021, the American Kratom Association estimates that kratom is a $1.3 billion a year industry, with 11 million to 15 million annual users within the United States. Studies show that 1 million United States residents use kratom monthly, and that two-thirds of those users use kratom daily.

25.　　Kratom's popularity is attributed to several factors: first, kratom is marketed as a safe substitute for painkillers and so it appeals to consumers who falsely equate "natural" with "safe;" second, kratom has received media attention as a "nootropic" or "smart" drug because it is stimulating at low doses; third, kratom is widely available and unregulated within the United States; fourth, it produces a "pleasurable" high; and lastly, users are unaware of kratom's opioid-like characteristics, addiction, and withdrawal potential.

26.　　Kratom is still a relatively unknown substance to the average consumer, and most people have never heard of it.

27.     Kratom sellers advertise it as a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, an anti-anxiety supplement, and that it improves focus and gives users a boost of energy to get through the day. Some even assure consumers that kratom is a non-addictive way to deal with opioid withdrawal. These kratom companies universally reiterate these purported "benefits" of kratom consumption, without disclosing any of the corresponding harms of kratom use.

28.     As a result of kratom manufacturers', retailers', and advertisers' failure to warn consumers of kratom's addictive potential, many kratom users find themselves blindsided when they stop taking kratom and find themselves facing severe withdrawal symptoms after having stopped using what they thought was a harmless supplement. Further, because kratom is relatively unknown in the United States, there are not well-established recovery resources for addicted users to turn to for resources and aid. Some kratom users turn to the Internet for support, and there are well-populated and very active Internet forum support groups for consumers struggling with, and recovering from, kratom addictions.

29.     The reports from addicted kratom users are heart-wrenching. Consistent among these reports is a feeling of initial shock when users realized they had become unknowingly addicted to kratom, and how difficult it was to stop their kratom use. Below are several accounts from the "Quitting Kratom" forum on www.reddit.com, which has over 45,000 members as of September 2024:[5]

    i.     In one post titled **This needs to stop!!! I want to jump CT but the anxiety!**, a user wrote:

> I have been doing this shit for 3 months. One of those Krave extracts from the smoke shop. Started one every other day for a months then for six weeks it was almost two I guess it say 6-9gs per serving. Then the last few weeks it's been two a day bc I'm killing myself with the anticipation. Is anyone else's stomach all fucked up from this? Like I havnt passed solid for a while, my gut hurts and seems like my gut health is just really bad. I have gabapentin but I'm so use to it, I have magnesium ready and been taking a multivitamin. I'm so afraid bc I went through a major Oxy habit 7 years ago. Been clean for 7 years from that except I've struggled with alcoholism on and off the last 7 years 6 months sober then go out. It's a cycle and I can't anymore. I'm 28 days sober after a 10 day relapse on drinking but have been on Kratom for the last 3 months and I hate it. Just looking for some support and advice to just make the jump. I bought 20g of powder extract from a reputable store but I can't taper I just can't. I tried maybe over a week I could. With only using for 3 months and not a high amount of shitty extract will am I blowing this outta proportion and making it worse? I just know I have to stop. I also want to know if anyone knows how to fix this guy and stomach issue? My eyes are blood shot and I just feel awful. I want out [....]

---

[5] *See* https://www.reddit.com/r/quittingkratom.

CLASS ACTION COMPLAINT

a.      **Another user responded:**

Dealing with the same shit. Get out while you can. I've gotten off benzos and alcohol too and Kratom wrecked my body more than those last time (daily use for 3-4 years) lost maybe 40 lbs and looked pale/ghostly and couldn't stomach more than 1 meals and was doing good up until 2 months ago where I relapsed and I'm slowly seeing the bags under my eyes and gut issues again :/ we need off at any cost [...] delete all open Kratom shop websites, cut off all contacts or smoke shops [...]This is pretty much what I'm going to do in a few days, I just have to work a couple days before I have a week to myself to sweat it out. You got this I could do it once and it really was mostly just a lot of cold sweats, runny nose, RLS and cravings

ii.      In another post titled **I've only only been taking ~3g-4g for several months, probably about 4. I just noticed withdrawal effects when trying to sleep last night and it scared the shit out of me.**, another user wrote:

I didn't really think about how addictive this stuff was, I didn't take it or any reason other than I liked the feeling after working hard all day. I tried to sleep last night and I had the most insane RLS and sweats throughout my entire body; it felt like my bones were electrically charges and trying to escape from my body. It looks like a lot of people have been taking much higher dosages than me and that's completely understandable. I've been taking ~6-10 krave capsules per day for a few months and I'm wondering if folks here think that's enough to justify a full-blown taper. I noticed the taper relies on pure powder and since I take capsules, I'm just trying to figure this out. I have job interviews currently (tech stuff) and really don't want to destroy myself in the process. That said, I really don't want to dig myself any deeper in this stuff and want to get away from it. Any thoughts on this would be greatly appreciated. Much love everyone.

30.     Other experiences with kratom (not necessarily Krave Products) described on the subreddit are similarly horrifying:

iii.     **One user wrote:**

I started using kratom in pill and powder form a couple years ago. I had no idea it was addictive, and I liked how it made me feel.... so much that I went from using it a couple weekends a month to wanting to use it every weekend to wanting to use it every day. I upped my dose a whole bunch, and soon I started to realize that, when I didn't take it, I would start to get what seemed like withdrawals! WTF? I googled it and did some more research and learned that I was indeed going through withdrawals. I immediately decided to suck it up and get off that stuff and spend a week withdrawing. Unfortunately, it wasn't that simple. I was addicted. That poison was in my mind constantly. I started using again and, LONG story short and many MANY other withdrawal attempts later, I had lost my JOB, my boyfriend, and my personality. It landed me in the hospital many times actually. I was losing hair, my eyes looked horrible, my skin was horribly dry, and I was miserable. I decided to go to REHAB. Effing rehab for this sh!t.

iv.      **Another user shared:**

I just tapered down from 80gpd to 20, and the experience was so awful that I just decided to jump yesterday, figuring "Let's just get this over with already!" Well, I gotta tell you, last night may have been one of the roughest nights of my life. It felt like a bad acid trip. I got zero sleep. The RLS was so bad I kept getting out of bed, bundling up, which was

exhausting in itself, and going for a loop around the property outside; while hoping to be able to crawl back in bed and actually sleep. Nope. It felt like I was being electrocuted!!! This is even with clonidine and gabapentin. But, I'm determined to NEVER go through that first night again! (And of course I was lamenting my rash decision to jump, and DYING to take some K). But, there's no turning back now. I'm hoping I'll get some sleep tonight since I had none last night. Wish me luck please :)

     v.     **Another user shared:**

I was the worst kratom addict I knew and now I'm coming up on 5 months sober. Let me first qualify VERY quickly… Multiple extract shots a day, crying on the way to the store, cut up all my credit cards multiple times (until I got Apple Pay), sent my credit cards to myself in the mail, got on oral naltrexone, got on vivitrol (the injectable shot), gave my wife my wallet, lied every day, … Today I'm sober off of everything and almost 5 months clean. I don't crave alcohol or drugs anymore. Cravings were my biggest problem. I don't think about kratom all day any longer. I had to walk my sad @$$ all the way to a 12 step program in order to get help. I have to talk to other struggling people. I had to start working a program of recovery which i still work…My habit was $50 a day, and with a newborn and mortgage etc I'm still trying to climb out of that hole. But man, to go from complete self-hate to self-love makes everything worth it. I hated myself, not anymore.

31.    This Internet forum is filled with other accounts like these, and the stories are consistently the same—well-meaning people were looking to feel better by taking with what they thought was an "herbal supplement," only to develop an opioid-like addiction. This anecdotal evidence makes clear that kratom's addictive potential is a material fact to reasonable consumers that, if known, would help inform their purchase and consumption decisions. However, Defendant's Products have no information whatsoever warning that kratom is similar to an opioid, is habit-forming, or that regular use will result in opioid-like dependency and withdrawal symptoms.

32.    Consumers who knew the truth about kratom may not have purchased Defendant's Products or would have paid less than they did for them.

**C.    Defendant Knew or Should Have Known it was Selling a Highly Addictive Drug to Unsuspecting Consumers**

33.    Despite kratom's traditional medical uses, the negative effects of kratom use have long been known and observed and are well-documented in Southeast Asia where the plant originates and has a long period of historic use. Kratom addiction in Thailand and Malaysia has been studied and documented in the United States by scientists and researchers since at least 1988.

34.    Upon information and belief, Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it.

35.     Even without such interactions, Defendant received numerous user reports about the addictive potential of kratom in the United States.

36.     Defendant therefore knew or should have known that the Products it was selling were highly addictive.

37.     Despite this knowledge, Defendant failed to disclose kratom's addictive potential to its customers on its website or on its Products' packaging.

38.     The furthest Defendant goes in "warning" a consumer about the usage of kratom is buried in a standard disclaimer at the bottom of the "Home" webpage of Defendant's website. Here, Defendant states, "Do not use if you are pregnant or nursing. It is illegal to possess Kratom if under 21 years of age…Consult your healthcare professional before using. Do not combine with alcohol or medication."[6] This disclaimer is a deliberately standard, uniform, and vague disclaimer one could easily find on an alcohol bottle. Defendant's disclaimer is misleading and far from the appropriate warning that consumers are entitled to. Kratom requires a far more detailed and comprehensive description warning consumers of its highly addictive nature, potential for seriously detrimental health effects, and susceptibility for withdrawal. Additionally, Defendant's disclaimer lacked any information on the recommended usage of the Products, which could lead unsuspecting consumers to using the Products on a daily basis, and further leading to addiction.

39.     Defendant has no excuse for its lack of a detailed disclaimer warning on its Krave Products' packaging of kratom's harms. The pharmacological effects of MG and 7-Hydroxymitragynine have been thoroughly studied, and it is well-established that kratom acts on the same mu-opioid receptors in the brain as traditional opioids do. Further, there are widespread reports and studies of other addiction and dependency issues.

40.     Defendant therefore knows or should have known that kratom users can develop an addiction. Yet, Defendant fails to disclose this material fact on its advertisements or on its Products' packaging.

41.     Despite this, Defendant markets its kratom Products as if they are nothing more than over-the-counter supplements. Indeed, the packaging looks more like allergy medication than a dangerously

---

[6] https://www.kravekratom.com.[7] https://www.kravekratom.com/red-maeng-da-kratom-capsules.

1 | strong opioid, and Defendant's website and design language obfuscates the very real truth that it is selling

2 | a strong narcotic to consumers who likely do not fully comprehend the risks associated with consuming

3 | the Products.

4 | 42.     Reasonable consumers looking at the Products' packaging and would not presume that

5 | kratom is highly addictive.

6 | 43.     Nowhere on the packaging does Defendant mention that kratom presents the same

7 | addiction problems that former opioid users and any other consumer would want to avoid. Consumers

8 | seeking help as they come off opioids may be drawn in by Defendant's misleading statements about

9 | kratom without knowing that they risk trading one addiction for another.

10 | 44.     As a kratom product seller, manufacturer and/or distributor, Defendant occupies a position

11 | of superior knowledge to the average reasonable consumer, who likely knows nothing about kratom.

12 | 45.     The information provided on Defendant's Products' packaging in particular is woefully

13 | sparse. A representative image of one of Defendant's Products is depicted below:



25 | 46.     On Defendant's website where it sells this kratom Product, Defendant does not provide

26 | any image of the back of the Product's bottle or show any ingredient list for the Product on the bottle or

27 | on the Product's webpage.[7]

28 |

---

[7] https://www.kravekratom.com/red-maeng-da-kratom-capsules.

CLASS ACTION COMPLAINT

47.     Nowhere in any of these disclaimers does Defendant provide any warning to consumers on the Products' packaging that its Products interact with opioid receptors or are highly addictive and should not be taken on a daily basis, or note any of the numerous negative side effects and withdrawal symptoms caused by its Products.

48.     Indeed, the entire contents of the warning on the Products' packaging is a bog-standard disclaimer—written in miniscule text—that consumers should consult a healthcare provider before use and that Defendant is not liable for "misuse of these products."

49.     A boilerplate disclaimer is plainly insufficient. This is a Product that poses a serious risk of intense addiction and withdrawal in line with traditional "hard" opioids.

50.     Addiction is a disease. As such, Defendant's Krave Products pose an unreasonable health hazard, and Defendant had and has a duty to disclose this fact on its Products' packaging.

51.     What's more, nothing about the Products' packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids, that function on the same mu-opioid receptors in the brain. To the contrary, the packaging proudly states "All Natural." Further, the company logo includes a pleasant-looking green leaf. It looks as innocuous as a vitamin supplement.

52.     Defendant, through its misleading advertising and its failure to disclose kratom's addictive properties on its Products' labels, relied upon the average consumer's incomplete knowledge of kratom to better sell its Products and get users addicted to them.

53.     Defendant fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's detriment.

54.     By any metric, Defendant's conduct is immoral, unethical, and contrary to California public policy.

55.     The United States is going through an opiate crisis that is shaking the foundations of our society. Amid this crisis, Defendant is creating more addicts for no reason other than to line its pockets, without adequate disclosure of its Products' risks through the use of false and misleading packaging and marketing. That cannot—and should not—stand, at least when Defendant's conduct entails breaches of warranty and violation of state consumer protection statutes as it does here.

**PARTIES**

56.     Plaintiff C.B. resides Victorville, California. In or around 2020, Plaintiff underwent two carpal tunnel surgeries and was prescribed Norco for pain. In or around 2021, she underwent a bunionectomy surgery and was again prescribed Norco for pain. During this time and afterward, Plaintiff developed a dependence on prescription pain killers. Plaintiff then heard about kratom as a potential way to help end her dependence on prescription pain killers, which was described to her as an effective way to curb opioid withdrawals. Plaintiff was not warned about any risk of further addiction, physical dependence, and withdrawals. Shortly thereafter, Plaintiff began purchasing Krave Products from a smoke shop called My Generation in Victorville, California. When purchasing Defendant's Products, Plaintiff examined the packaging for a label warning about addiction or dependence or dosing instructions and did not see one. As time went on, Plaintiff began requiring more and more of Defendant's Products to achieve the same effect and stave off withdrawals. She would spend approximately $30 per week on a 120-gram bag of Defendant's loose powder Products and consume approximately 17 grams per day.

57.     Plaintiff realized she was physically captive to Defendant's Products in or around the end of 2023 when she tried to quit the first time. Before that, she was not sure she was physically addicted and dependent on Defendant's Products to avoid becoming "sick." However, shortly into her first attempt, it was abundantly clear how addicted she had actually become and, unfortunately, her many personal responsibilities forced her to continue back on Defendant's Products. Since then, she has tried to quit on multiple occasions. Each time she does, she experiences symptoms of irritability, nausea, opioid-like withdrawals, malaise, lack of energy, and severe brain fog. The withdrawal effects are so bad that she has been unable to go more than a couple days, at most, each time she has tried to quit.

58.     Unfortunately, Plaintiff continues to be a daily user. She consumes extract shots on a near-daily basis and otherwise consumes two to three teaspoons of powder three times per day. Some of Plaintiff's recent purchases of Krave products include White Thai Powder (May 13, 2024), White Maeng Da Powder (May 7, 2024), Trainwreck Powder (March 28, 2024), Bali Powder (March 3, 2024), White Maeng Da Powder (February 16, 2024), and White Thai Powder (January 27, 2024), in addition to more recent purchases. Each of the purchases described here occurred at the My Generation Smoke Shop in

Victorville, California. Had Plaintiff known that Defendant's Krave Products were highly addictive, by way of a warning on the Products' packaging, she would have never purchased it.

59.     Defendant Ashlynn Marketing Group, Inc., doing business as Krave, is a California corporation with its principal place of business in Santee, California. Defendant Krave owns and operates the Krave website, www.kravekratom.com, and also advertises, markets, distributes, and sells its Krave Products in California and throughout the United States.

60.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and members of the proposed Classes (defined below) as alleged herein. Plaintiff reserves the right to amend this Complaint to set forth the true names and capacities of these defendants when they are ascertained, along with appropriate charging allegations, as may be necessary.

## CLASS ALLEGATIONS

61.     Plaintiff brings this action pursuant to Section 382 of the California Code of Civil Procedure on behalf of herself and all other Class members, defined as follows:

> All persons nationwide who, within the applicable statute of limitations period, purchased Krave kratom products (the "Nationwide Class").

> All persons who, within the applicable statute of limitations period, purchased Krave kratom products while in California (the "California Class").

62.     Excluded from the Classes is Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend these Class definitions, including the addition of one or more subclasses, in connection with her motion for Class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

63.     *Numerosity*: The members of the Classes are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Classes contain at least thousands of

consumers throughout California and the United States who have been damaged by Defendant's conduct as alleged herein. The precise number of members of the Classes is unknown to Plaintiff at this time.

64.    ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

      a.    whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

      b.    whether Defendant knew that kratom is a highly addictive substance that causes physical and psychological dependence and opioid-like withdrawal symptoms;

      c.    whether Defendant's conduct alleged herein violates the FAL, the CLRA, and/or the UCL;

      d.    whether Defendant's conduct alleged herein constitutes unjust enrichment;

      e.    whether Defendant's conduct constitutes a fraudulent omission; and

      f.    whether Plaintiff and the Classes are entitled to damages and/or restitution; and

      g.    whether an injunction is necessary to prevent Defendant from continuing to sell its Krave Products without warning labels of their addictiveness.

65.    ***Typicality***: Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Class members sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and akin to opioids.

66.    ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the members of the Classes.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Classes.

67.    ***Superiority***: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable;

prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

68.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

69.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff, members of the Classes, and the general public—who are also negatively impacted by the dregs of addiction—and will likely retain the benefits of Defendant's wrongdoing.

70.     Based on the forgoing allegations, Plaintiff's claims for relief include those set forth below.

71.     Plaintiff is informed that Defendant keeps extensive computerized records through its online sales data, as well as through, inter alia, general marketing programs. Defendant has one or more databases through which a significant majority of members of the Classes may be identified and ascertained, and Defendant maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Business and Professions Code, § 17200,** *et seq.*
**(*On behalf of the California Class*)**

72.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

73.     Plaintiff brings this cause of action individually and on behalf of the members of the proposed California Class against Defendant.

74.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent, business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by unlawful and/or unfair business practices or acts.

75.     As alleged below, Defendant has committed unlawful, fraudulent, and/or unfair business practices under the UCL by (a) representing that its Products have certain characteristics that they do not, in violation of California Civil Code Section 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of California Civil Code Section 1770(a)(9); (c) selling addictive substances to unsuspecting consumers and profiting from their addiction; and (d) failing to disclose that its kratom Products pose a serious risk of addiction.

76.     Defendant's conduct has the capacity to mislead a significant portion of the general consuming public and to target consumers, acting reasonably in the circumstances.

77.     Defendant's conduct has injured Plaintiff and the California Class she seeks to represent in that they paid money for a Product that they would not have purchased or paid more than they would have but for Defendant's failure to disclose the addictive nature of its kratom Products. Such injury is substantial and is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's labels, and thus also Defendant's omissions, consumers themselves could not have reasonably avoided such injury.

78.     Moreover, Defendant's Products pose an unreasonable health hazard because kratom is highly addictive and may induce serious withdrawal symptoms. Accordingly, Defendant had a duty to consumers to disclose on the Products' labels that its kratom Products pose a risk of physical and psychological dependence.

79.     Pursuant to California Business and Professions Code Section 17203, Plaintiff and the California Class members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Class members; (b) disgorge all revenues obtained as a result of Defendant's violations of the UCL; and (c) pay Plaintiff and the California Class members' attorneys' fees and costs.

80.     Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law ("FAL")**
**Business and Professions Code, § 17500, *et seq.***
***(On behalf of the California Class)***

81.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

82.    Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

83.    Defendant's acts and practices, as described herein, have deceived, and are likely to continue to deceive, California Class members and the public at large. As described above and throughout this Complaint, Defendant failed to disclose that kratom is addictive on its Products' packaging.

84.    Defendant disseminated uniform advertising regarding its kratom Products to and across California. This advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of the FAL. Such advertisements were intended to, and likely did, deceive the consuming public for the reasons detailed herein.

85.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because Defendant continues to misrepresent that kratom is not addictive.

86.    Defendant knew, or should have known, that in making and disseminating these statements, its advertisements were untrue and misleading in violation of California law. Defendant knows that kratom is addictive yet fails to disclose this fact to consumers.

87.    Plaintiff and the California Class members purchased Defendant's Products based on Defendant's misrepresentations and omissions indicating that kratom is not addictive.

88.    Defendant's misrepresentations and non-disclosures of the material facts described herein constitute false and misleading advertising and, therefore, constitute a violation of the FAL.

89.    As a result of Defendant's wrongful conduct, Plaintiff and the California Class members lost money in an amount to be proven at trial. Plaintiff and the California Class are therefore entitled to restitution as appropriate for this cause of action.

90.    Plaintiff and the California Class seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent

business practices; declaratory relief; reasonable attorneys' fees and costs under California Code Civil Procedure Section 1021.5; and other appropriate equitable relief.

**THIRD CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code, § 1750, *et seq.***
*(On behalf of the California Class)*

91.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

92.    Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

93.    Plaintiff and California Class members are consumers within the meaning of California Civil Code Section 1761(d) of the CLRA.

94.    Civil Code Section 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or he does not have."

95.    Civil Code Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

96.    Civil Code Section 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

97.    Defendant violated Civil Code Sections 1770(a)(5), (a)(7), and (a)(9) by failing to disclose that its Products are addictive, an unreasonable health hazard and necessarily a fact which is material to reasonable consumers.

98.    Defendant's misrepresentations and omissions deceived, and have a tendency and ability to deceive, the general public.

99.    Defendant has exclusive or superior knowledge of kratom's addictive nature, which was not known to Plaintiff or California Class members.

100.   Plaintiff and California Class members have suffered harm as a result of these violations of the CLRA, Civil Code Section 1750, because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had they known that kratom is addictive and

causes withdrawals. As a result, Plaintiff and the California Class are entitled to actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

101. On or about April 17, 2024, Plaintiff served Defendant with a pre-suit notice pursuant to Civil Code Section 1782. Plaintiff's notice advised Defendant of its violations of Civil Code Section 1770 and demanded Defendant rectify the unlawful, unfair, false, and deceptive practices complained discussed therein. Defendant failed to respond appropriately to Plaintiff's letter, nor did it agree to rectify any of the problems associated with its ongoing misconduct, including giving notice or issuing refunds to all affected consumers within 30 days of the date of the notice, as prescribed by Section 1782. Plaintiff therefore seeks all applicable damages available under the CLRA against Defendant, including, as appropriate, actual, consequential, punitive, and statutory.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty**
*(On behalf of the Nationwide Class)*

102. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

103. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

104. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that kratom is not addictive and does not cause opioid-like withdrawal symptoms because it did not provide disclosure on the Products' packaging stating otherwise.

105. Defendant breached its warranty implied in the contract for the sale of its kratom Products because the Products could not pass without objection in the trade under the contract description: the kratom Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and the Nationwide Class members, and the Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and the members of the Nationwide Class did not receive the goods as impliedly warranted by Defendant to be merchantable.

106. Plaintiff and the Nationwide Class members purchased the Products in reliance upon Defendant's skill and judgement and the implied warranties of fitness for the purpose.

107. The kratom Products were defective when they left Defendant's exclusive control.

108. Plaintiff and the Nationwide Class did not receive the goods as warranted.

109. As a direct and proximate cause of Defendant's breach of its implied warranty, Plaintiff and the Nationwide Class have been injured and harmed because (i) they would not have purchased Defendant's Products on the same terms if they knew that the Products were addictive and could cause opioid-like withdrawal symptoms; and (ii) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

110. On or about October 18, 2024, Plaintiff served Defendant with a pre-suit notice pursuant to U.C.C. Sections 2-314 and 2-607. Plaintiff's notice advised Defendant of its breaches of implied warranty and demanded Defendant cease and desist and to make full restitution by refunding the monies obtained from its misconduct.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
***(On behalf of the Nationwide Class)***

111. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as fully stated herein.

112. Plaintiff brings this claim individually and on behalf of the Nationwide Class members against Defendant.

113. Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

114. Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Nationwide Class members.

115. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class members' purchases of the Products, and retention of such revenues under these circumstances is unjust and inequitable because Defendant failed to disclose on the Products' packaging that the Products were addictive and similar to opioids. This caused injuries to Plaintiff and the Nationwide Class because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

116. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Nationwide Class members.

117.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

118.    Plaintiff and the Nationwide Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

119.    As a direct and proximate result of Defendant's actions, Plaintiff and the Nationwide Class members have suffered in an amount to be proven at trial.

120.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products is determined to be an amount less than the premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

121.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price will ensure that Plaintiff is in the same place she would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

### SIXTH CAUSE OF ACTION
**Fraud by Omission**
***(On behalf of the Nationwide Class)***

122.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

123.    Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

124.    Defendant distributed its Products throughout the United States, including within the State of California.

125.    Defendant misrepresented that its kratom Products had attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

126.    Defendant knows that kratom is addictive because it interacts with kratom vendors and has received consumer reports of addiction and withdrawal.

CLASS ACTION COMPLAINT

127.    Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers because addiction is an unreasonable health hazard.

128.    Defendant therefore had a duty to Plaintiff and to the Nationwide Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

129.    Consumers reasonably and justifiably relied on Defendant's omissions, because it is reasonable to assume that a product which is addictive like an opioid would bear a warning on its packaging.

130.    As a result of Defendant's omissions, Plaintiff and the Nationwide Class paid for kratom Products they may not have purchased, or paid more for those Products than they would have, had they known the truth about kratom.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, and on behalf of the Classes, respectfully requests this Court award relief against Defendant as follows:

   a.    an order certifying the Classes and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

   b.    award Plaintiff and members of the Classes actual, consequential, punitive, and statutory damages, as appropriate;

   c.    award restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices described herein;

   d.    award declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing its unlawful practices set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money it is required to pay;

   e.    order Defendant to engage in a corrective advertising campaign;

   f.    award attorneys' fees and costs; and

   g.    award any other further relief as the Court may deem necessary or appropriate.

1

## **JURY TRIAL DEMANDED**

2

Plaintiff demands a trial by jury on all claims so triable.

3    Dated: October 18, 2024                     **LYNCH CARPENTER, LLP**

4                                          By:   */s/Todd D. Carpenter*

5                                                Todd D. Carpenter (State Bar No. 234464)
                                                 todd@lcllp.com

6                                                Scott G. Braden (State Bar No. 305051)
                                                 scott@lcllp.com

7                                                James B. Drimmer (State Bar No. 196890)
                                                 jim@lcllp.com

8                                                1234 Camino Del Mar
                                                 Del Mar, CA 92014

9                                                Telephone:    (619) 762-1910
                                                 Facsimile:    (858) 313-1850

10                                               *Attorneys for Plaintiff and*

11                                               *Proposed Class Counsel*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1   **LYNCH CARPENTER, LLP**
     Todd D. Carpenter (State Bar No. 234464)
2   todd@lcllp.com
     Scott G. Braden (State Bar No. 305051)
3   scott@lcllp.com
     James B. Drimmer (State Bar No. 196890)
4   jim@lcllp.com
     1234 Camino Del Mar
5   Del Mar, CA 92014
     Telephone:  (619) 762-1910
6   Facsimile:   (858) 313-1850

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
10/18/2024 4:01:08 PM
Clerk of the Superior Court
By N. Argamosa   ,Deputy Clerk

7   *Attorneys for Plaintiff and Proposed Class Counsel*

9         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **FOR THE COUNTY OF SAN DIEGO**

11   C.B., individually on behalf of herself and on
      behalf of all others similarly situated,
12

13            Plaintiff,

14         v.

15   ASHLYNN MARKETING GROUP, INC., doing
      business as KRAVE KRATOM, and DOES 1-50,
16   inclusive,

17           Defendants.

Case No.    24CU019004N

**DECLARATION IN SUPPORT OF
JURISDICTION**

19      I, Todd D. Carpenter, declare under penalty of perjury the following:

20      1.     I am an attorney duly licensed to practice before all of the courts in the State of California.

21   I am a partner and part-owner of Lynch Carpenter, LLP, and the counsel of record for Plaintiff C.B. in the

22   above-entitled action.

23      2.     On information and belief, Defendant Ashlynn Marketing Group, Inc., d/b/a Krave, Krave

24   Kratom, and/or Krave Botanicals ("Defendant" or "Krave") is a California corporation with its principal

25   place of business in Santee, California, within the County of San Diego. Defendant conducts sufficient

26   business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself to the

27   California market through the sale of its Krave branded kratom products throughout brick-and-mortar

28   storefronts in California, including in the County of San Diego, and the e-commerce website

1  www.kravekratom.com, which has caused Defendant to incur obligations and liabilities in the County of

2  San Diego.

3      I declare under penalty of perjury under the laws of the State of California that the foregoing is

4  true and correct.

5      Executed October 18, 2024, in San Diego, California.

6                                            **LYNCH CARPENTER, LLP**

7                             By:   */s/ Todd D. Carpenter*

8                                   Todd D. Carpenter (Sate Bar No. 234464)
                                    todd@lcllp.com

9                                   1234 Camino del Mar
                                    Del Mar, California 92014

10                                  Telephone:    (619) 762-1910
                                    Facsimile:    (858) 313-1850

11                                  *Attorneys for Plaintiff and*

12                                  *Proposed Class Counsel*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION IN SUPPORT OF JURISDICTION



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 24CU019004N                    CASE TITLE: CB vs Ashlynn Marketing Group INC

<u>**NOTICE:**</u> **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
> **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** <u>***and***</u>
> **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

<u>**Potential Advantages and Disadvantages of ADR**</u>
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

<u>**Most Common Types of ADR**</u>
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u> Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    325 South Melrose Dr.

MAILING ADDRESS:    325 South Melrose Dr.

CITY AND ZIP CODE:    Vista, 92081

BRANCH NAME:    North

PLAINTIFF(S):  C. B.

DEFENDANT(S):  Ashlynn Marketing Group,  Inc.

SHORT TITLE: CB VS ASHLYNN MARKETING GROUP INC

*FOR COURT USE ONLY*

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: 24CU019004N |
|---|---|

Judge:  MICHAEL D. WASHINGTON                                         Department:  N-31

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                        ☐ Non-binding private arbitration

☐ Mediation (private)                                     ☐ Binding private arbitration

☐ Voluntary settlement conference (private)       ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                          ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                  Date: _____

Name of Plaintiff                                             Name of Defendant

Signature                                                    Signature

Name of Plaintiff's Attorney                                 Name of Defendant's Attorney

Signature                                                    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 10/24/2024

JUDGE OF THE SUPERIOR COURT

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 325 South Melrose Dr. | |
| MAILING ADDRESS: 325 South Melrose Dr. | |
| CITY AND ZIP CODE: Vista, 92081 | |
| BRANCH NAME: North | |
| TELEPHONE NUMBER: 760-201-8031 | |

| PLAINTIFF(S) / PETITIONER(S): C. B. |
|---|

| DEFENDANT(S) / RESPONDENT(S): Ashlynn Marketing Group, Inc. |
|---|

| CB VS ASHLYNN MARKETING GROUP INC |
|---|

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL)** | CASE NUMBER: <br> 24CU019004N |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge: MICHAEL D. WASHINGTON                    Department: N-31

**COMPLAINT/PETITION FILED:** 10/18/2024

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT |
|---|---|---|---|
| Case Management Conference | 04/04/2025 | 9:00 AM | N-31 |

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.